**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM DUNNE and THOMAS FARRUGIA,<br><br>        Petitioners,<br><br>v.<br><br>C.L. SWAIN, Warden,<br><br>        Respondent. | Case No. CV 18-9728 MWF (SS)<br><br>**ORDER TO SHOW CAUSE WHY THE MAGISTRATE JUDGE SHOULD NOT RECOMMEND THAT THIS ACTION BE DISMISSED FOR:**<br><br>**(1) PETITIONER DUNNE'S FAILURE TO PAY THE INITIAL PARTIAL FILING FEE; AND**<br><br>**(2) PETITIONER FARRUGIA'S FAILURE TO FILE AN IFP APPLICATION** |

**I.**

**INTRODUCTION**

On December 17, 2018, Petitioners William Dunne and Thomas Farrugia, federal prisoners proceeding pro se, filed a document captioned "Petition for Relief in the Nature of Mandamus" under 28 U.S.C. § 1361. ("Petition," Dkt. No. 2). Petitioners contend that the Federal Correctional Institution-1 at Victorville, California does not have a "functioning administrative remedy" process and seek, among other relief, an Order requiring Warden C.L. Swain to

implement specific changes to the processing of prisoner grievances.

On the same day that the Petition was accepted for filing, Dunne, but not Farrugia, filed a Request for Waiver of Filing Fee ("Waiver Request I," Dkt. No. 3), including the Declaration of William Dunne in support of the Request. ("Dunne Decl. I," Dkt. No. 4). The Court construed Waiver Request I as an application to proceed in forma pauperis ("IFP"), and on **January 29, 2019**, granted Dunne IFP status, with an order to pay an initial partial filing fee of $70.80 within thirty days of the Court's Order. ("IFP Order," Dkt. No. 10). On February 14, 2019, the Court received payment of $5.00 from Dunne, the amount of the filing fee for habeas actions.

Shortly after the IFP Order issued, Dunne re-filed his Waiver Request ("Waiver Request II"), including the Declaration of William Dunne ("Dunne Decl. II"). (Dkt. No. 13). Waiver Request II and Dunne Declaration II were nothing more than photocopies of Waiver Request I and Dunne Declaration I, with one handwritten interlineation added to Dunne Declaration II.[1] (Id.; compare Dkt. Nos. 3-4). On **June 4, 2019**, the Court denied Waiver Request II on the ground that, contrary to Dunne's contentions, this action is

---

[1] Whereas Dunne Declaration I stated that Dunne's prison trust account balance as of December 3, 2018 was $198.77, the handwritten interlineation in Dunne Declaration II states that Dunne's account balance as of December 3, 2018 (the same date in the earlier Declaration) was $181.40. (Compare Dkt. No. 4 ¶ 17 with Dkt. No. 13 ¶ 17). This amendment appears to be a correction of a prior mathematical error, not a reflection of a change in Dunne's account balance, as the date of the balance computation remained the same.

2

subject to the filing fee requirements of the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), codified at 28 U.S.C. § 1915. ("PLRA Order," Dkt. No. 23, at 7-8).

Accordingly, the Court denied Waiver Request II <u>with</u> prejudice to the extent that the Request could be "construed to seek a finding that the filing fee provisions of the PLRA do not apply to the instant action in mandamus." (<u>Id.</u> at 7). However, to the extent that Waiver Request II could be construed as a challenge to the <u>amount</u> of the initial partial filing fee assessed in the January 2019 IFP Order, the Court denied the Request <u>without</u> prejudice to Dunne filing "an updated Request for an adjustment of the amount of the initial partial filing fee based on changed circumstances, supported by a copy of his trust account statement for the prior six months." (<u>Id.</u> at 8).

As of today, Dunne has not paid the balance due on the initial partial filing fee assessed by the Court over **nine months** ago.[2] Nor has he requested an adjustment to the amount of the initial partial filing fee to reflect his changed financial circumstances, if any. Farrugia still has not filed an IFP application at all. For the reasons stated below, Dunne and Farrugia are each ORDERED to show cause why this action should not be dismissed for their separate failures to comply with the filing fee requirements of the PLRA.

---

[2] The balance owing is $65.80 ($70.80 - $5.00 = $65.80).

# II.

## THE PLRA'S REQUIREMENTS APPLY TO THIS ACTION

Dunne argued in Waiver Request II that this action is akin to a habeas action and is therefore exempt from the PRLA. In the PLRA Order, the Court explained in some detail why the PLRA's provisions apply in this case. For the sake of completeness, the Court repeats that explanation here.

> It is well settled that "the PLRA does not extend to a prisoner's use of habeas corpus petitions." Washington v. Los Angeles Cnty. Sheriff's Dep't, 833 F.3d 1048, 1058 (9th Cir. 2016); see also Andrews v. King, 398 F.3d 1113 (9th Cir. 2005) ("The 'PLRA's revised [in] forma pauperis provisions relating to prisoners do not apply to habeas proceedings.'") (quoting Naddi v. Hill, 106 F.3d 275, 277 (9th Cir. 1997); brackets in original). However, the PLRA, including its filing fee requirements, does apply "in 'a civil action' or the 'appeal [of] a judgment in a civil action or proceeding.'" Washington, 833 F.3d at 1058 (quoting 28 U.S.C. § 1915(g); brackets in original). Whether a particular mandamus petition is more civil or criminal in nature is a case-specific inquiry.
>
> The Ninth Circuit has observed that "mandamus, as a common-law writ that functions in some respects like an appeal, is not categorically either civil or

4

criminal." El-Shaddai v. Zamora, 833 F.3d 1036, 1047 (9th Cir. 2016) (citing Washington, 833 F.3d at 1057-59). The Ninth Circuit instructs that the determination of whether a given mandamus petition should be deemed "civil" (and thus subject to the PLRA) or "criminal" (and thus exempt from the PLRA) "depends on the nature of the underlying claim." El-Shaddai, 833 F.3d at 1047; see also Washington, 833 F.3d at 1057-59 (adopting reasoning of Martin v. United States, 96 F.3d 853, 854-55 (7th Cir. 1996), regarding civil-criminal distinction to be applied to mandamus petitions). In Washington, for example, the court determined that the petitioner's mandamus petitions were not subject to the PLRA because they "directly challenged underlying criminal proceedings" and therefore "operated like habeas petitions challenging a criminal conviction." Id.; see also El-Shaddai, 833 F.3d at 1047 (mandamus petition was "like a habeas petition and outside of the scope of the PLRA" where it directly challenged petitioner's "sentence and parole terms," and thus, "the duration of his criminal sentence").

In contrast, where the mandamus petition arises from an action that will not affect the fact or duration of the petitioner's confinement, courts have found that the petition must comply with the PLRA. See, e.g., In re Grant, 635 F.3d 1227, 1230 (D.C. Cir. 2011) (applying PLRA filing fee requirements to mandamus petition

challenging order transferring petitioner's underlying civil complaint to another district); Misiak v. Freeh, 22 F. App'x 384, 386 (6th Cir. 2001) ("The PLRA applies to mandamus petitions that seek relief analogous to civil complaints under 42 U.S.C. § 1983."); In re Tyler, 110 F.3d 528, 529 (8th Cir. 1997) ("[A] mandamus petition arising from an ongoing civil rights lawsuit falls within the scope of the PLRA."); In re Nagy, 89 F.3d 115, 117 n.1 (2d Cir. 1996) ("Whether the PLRA applies to a writ of mandamus directed to a judge conducting a civil lawsuit would normally depend on whether the writ was simply an alternative device for obtaining the relief sought in civil actions that are covered by the PLRA."); Tillisy v. U.S. Fed. Bureau of Prisons, 2015 WL 1058256, at *2 (W.D. Wash. Mar. 10, 2015) (mandamus petition seeking order compelling petitioner's transfer to a different prison for advanced medical care was subject to PLRA requirements because it arose "in the context of civil litigation"); Fjerstad v. Palmquist, 2008 WL 4331633, at *1 (W.D. Wash. Sept. 17, 2008) (mandamus petition alleging prison's failure to comply with federal regulations governing visitation privileges "must comply" with the PLRA because the petition arose "in the context of civil litigation").

Petitioners' complaints in this action concern the conditions of their confinement, not its duration. As

Petitioners argued, "[a]s a result" of Swain's alleged failure to comply with grievance process regulations,

> medical services are slow-walked if provided at all, meals frequently deviate downward from the prescribed national menu without appropriate substitutes, recreational and other equipment is not repaired or issued in sufficient quantity, recreation is needlessly constrained, vocational programs are un- or underprovided, paperwork is not timely processed, provision of sanitation supplies is neglected, lights are not restored, etc., etc.

(Petition at 15). Not one of the many dozens of grievances listed on Dunne's grievance log directly challenges the fact of his conviction or the duration of his confinement. (Petition, Exh. 1). Similarly, Farrugia's grievances, attached as Exhibits to the Petition, concern only the conditions of his confinement. (Id., Exhs. 11-13). The mandamus relief Petitioners are seeking here arises from "civil actions" or appeals, not from underlying criminal matters. Accordingly, the Court concludes that the PLRA applies to the instant Petition, including the requirement in 28 U.S.C. § 1915(b)(1) that inmates proceeding in forma pauperis be "required to pay the full amount of a filing fee."

# III.

**UNDER THE PLRA, EVEN PRISONERS PROCEEDING <u>IN FORMA PAUPERIS</u> MUST PAY THE FULL FILING FEE**

The PLRA authorizes district courts to permit "the commencement . . . of any suit, action or proceeding . . . without prepayment of fees or security therefore" by a prisoner upon the submission of an affidavit and a copy of the prisoner's trust fund statement. 28 U.S.C. § 1915(a)(1)-(2). However, unlike actions brought by non-prisoners, in which IFP status confers a complete waiver of the filing fee, under the PLRA,

> if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court <u>shall assess</u> and, <u>when funds exist, collect</u>, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--
>
> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

<u>Id.</u> § 1915(b)(1) (emphasis added); <u>see also</u> <u>Lewis v. Nevada</u>, 2014 WL 65799, at *1 (D. Nev. Jan. 7, 2014) ("[W]hile a prisoner

plaintiff granted pauper status may be allowed to pay only an initial partial filing fee, he ultimately will be required to pay the full filing fee through installment payments drawn from his inmate trust account.").

If a prisoner does not pay the full filing upon initiating a civil action, the PLRA requires a court to (1) examine the prisoner's finances, (2) assess an initial partial payment as a condition of filing suit, and (3) if funds are available, collect the amount assessed. See Taylor v. Delatoore, 281 F.3d 844, 850 (9th Cir. 2002) ("Although the court can collect the initial fee only 'when funds exist,' the court is to assess the initial fee based on the prisoner's account deposits and balances in the six-month period immediately preceding the filing of the complaint.") (emphasis in original). These requirements are intended to further the PLRA's purpose of reducing baseless prisoner lawsuits. As the Ninth Circuit has explained,

> The PLRA filing fee provisions were enacted to deter the large number of frivolous inmate lawsuits that were "clogging" the federal courts and "draining" limited judicial resources. See [Tucker v. Branker, 142 F.3d 1294 1296 (1998)] (citing statement of Sen. Kyl, 141 Cong. Rec. S7526 (daily ed. May 25, 1995)). This goal of deterring meritless prisoner filings in the federal courts is within the "realm of Congress's legitimate interests." [Hampton v. Hobbs, 106 F.3d 1281 1287 (6th Cir. 1997)]; see also [Nicholas v. Tucker, 114

F.3d 17, 20 (2d Cir. 1997)]. The § 1915(b) filing fee requirements are rationally related to the achievement of that interest. See Hampton, 106 F.3d at 1287; Nicholas, 114 F.3d at 20. Congress enacted the PLRA with the belief that the "lack of economic disincentives to filing meritless cases" had contributed to the proliferation of prisoner litigation, [Roller v. Gunn, 107 F.3d 227, 230 (4th Cir. 1997)], and reasoned that "'[t]he modest monetary outlay will force prisoners to think twice about the case and not just file reflexively,'" see [Mitchell v. Farcass, 112 F.3d 1483, 1488 (11th Cir. 1997)] (quoting statement of Sen. Kyl, 141 Cong. Rec. S7526 (daily ed. May 25, 1995)).

Taylor v. Delatoore, 281 F.3d 844, 849 (9th Cir. 2002); see also Hubbard v. Haley, 262 F.3d 1194, 1196 (11th Cir. 2001) ("[T]he intent of Congress in promulgating the PLRA was to curtail abusive prisoner tort, civil rights, and conditions of confinement litigation.").

The Ninth Circuit has further held that the PLRA's filing fee requirements pass constitutional muster because they do not impose an undue burden on prisoners' access to the courts, due to the safeguards built into the statute:

Although the PLRA fee provisions require all prisoners proceeding IFP to pay initial fees and monthly fees thereafter, several provisions of the PLRA decrease

> the burden the fee requirements place on rights of indigent prisoners to meaningful access to the courts. For example, as mentioned above, the initial and monthly-payment calculations are based on the prisoner's assets and are limited to 20 percent of that amount. See 28 U.S.C. §§ 1915(b)(1)-(2). In addition, the initial fee can be collected only "when funds exist" and the monthly payments can be deducted only when the prisoner's account balance exceeds ten dollars. Id. Moreover, the safety-valve provision ensures that a prisoner cannot be barred from bringing a civil action or an appeal when he or she does not have enough money to pay the initial fee.

Taylor, 281 F.3d at 848 (citing 28 U.S.C. § 1915(b)(4)).

Similarly, a court may not dismiss a lawsuit brought by a prisoner whose funds become depleted after the initial partial filing fee is assessed and who can no longer pay. Id. at 850-51 (citing § 1915(b)(4)). In all other circumstances, however, a court may dismiss a prisoner's civil action for failure to pay the initial partial filing fee. See Olivares v. Marshall, 59 F.3d 109, 112 (9th Cir. 1995) (upholding dismissal for failure to pay initial partial filing fee where prisoner had enough money to buy "name brand toiletries" and snacks); McGuire v. United States, 2019 WL 1585199, at *1 (C.D. Cal. Apr. 12, 2019) ("A court may dismiss a prisoner's civil-rights action for failure to pay the initial partial filing fee (or indeed any portion of the full fee).");

Wagner v. Peppler, 2008 WL 4830022, at *2 (C.D. Cal. Nov. 5, 2008) ("A court may dismiss a prisoner's § 1983 claim for failure to pay a partial filing fee.") (citing Olivares, 59 F.3d at 111). "Dismissal is also appropriate when a prisoner fails to respond to an OSC concerning his failure to pay the filing fee." Mitchell v. Gutierrez, 2013 WL 2898061, at *1 (C.D. Cal. June 12, 2013); Stoll v. Riverside Cnty. Sheriff Dep't, 2018 WL 4039862, at *1 (C.D. Cal. July 2, 2018), report and recommendation adopted, 2018 WL 4039932 (C.D. Cal. Aug. 21, 2018) (dismissing action for failure to prosecute after plaintiff did not respond to order to show cause concerning his failure "to submit the required initial partial filing fee").

## IV.

**DUNNE MUST SHOW CAUSE WHY THIS ACTION SHOULD NOT BE DISMISSED FOR HIS FAILURE TO PAY THE INITIAL PARTIAL FILING FEE**

Dunne was ordered to pay an initial partial filing fee of $70.80 on January 29, 2019, nearly nine months ago. Dunne has paid only $5.00, apparently in defiance of the Court's finding that the PLRA's filing fee requirements apply here. Nor has Dunne ever executed and filed an authorization permitting prison officials to assess, collect and forward monthly payments to the Court in accordance with 28 U.S.C. § 1915(b)(2). Accordingly, Dunne is **ORDERED** to file **one** of the following three documents within **thirty days** of the date of this Order:

\\

\\

1. A fully executed "Prisoner Authorization" authorizing monthly payments from Dunne's trust account pursuant to 28 U.S.C. § 1915(b)(2), accompanied by payment of the outstanding balance of $65.80 on the initial partial filing fee assessed by the Court on January 29, 2019; **or**

2. A request for an adjustment of the initial partial filing fee based on changed economic circumstances, accompanied by a fully executed "Prisoner Authorization" authorizing monthly payments from Dunne's trust account pursuant to 28 U.S.C. § 1915(b)(2) <u>and</u> a copy of Dunne's certified trust account statement for the previous six months; **or**

3. A declaration explaining why Dunne or this action should not be dismissed for failure to pay the initial partial filing fee pursuant to the Court's January 29, 2019 Order.

Should Dunne choose option three, he is advised that the Court has already considered and rejected the argument that the PLRA does not apply to this action and will be disinclined to revisit that finding based on arguments already asserted in Waiver Request II. (Dkt. No. 23). Alternatively, Dunne may file a Notice of Dismissal, **a copy of which is attached for his convenience**.

\\
\\

13

Dunne is expressly advised that if he does not file one of the documents listed above by the Court's deadline, the Court will recommend that he or this action be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute and obey Court orders.

## V.
## FARRUGIA MUST SHOW CAUSE WHY THIS ACTION SHOULD NOT BE DISMISSED FOR HIS FAILURE TO FILE AN IFP APPLICATION

While Dunne has paid only a fraction of the initial partial filing fee applying to him, Farrugia has failed to file an IFP application at all, apparently in the belief that he may rely on Dunne's payment of the filing fee. He may not. Even if Dunne had complied with the PLRA, which he has not, Farrugia is still not excused from filing an IFP application on his own behalf if he wishes to proceed in forma pauperis in this action.

There is some disagreement among the Circuits concerning how the PLRA affects prisoners' ability to pursue multi-plaintiff IFP actions. In Hubbard v. Haley, for example, the Eleventh Circuit concluded that because "the PLRA clearly and unambiguously requires that 'if a prisoner brings a civil action . . . the prisoner shall be required to pay the full amount of a filing fee,'" the PLRA supersedes Federal Rule of Civil Procedure 20, which governs permissive joinder of parties, and prohibits prisoners from joining together in multi-plaintiff actions at all. Hubbard, 262 F.3d at 1197 (affirming lower court ruling that under the "clear language

of the PLRA . . . each prisoner must bring a separate suit in order to satisfy the Act's requirement that each prisoner pay the full filing fee").

In Boriboune v. Berge, 391 F.3d 852 (7th Cir. 2004), the Seventh Circuit agreed with the Eleventh Circuit that the PLRA requires each prisoner plaintiff "seeking to proceed in forma pauperis to pay one fee apiece." Id. at 855. However, it determined that because the PLRA did not expressly repeal or modify Rule 20, "district courts must accept complaints filed by multiple prisoners if the criteria of permissive joinder are satisfied." Id. at 855. At the same time, to maintain "the system of financial incentives created by the PLRA," id. at 854, the Bouriboune Court instructs that if joinder is permitted, a district court should take "a per-litigant approach to fees" and hold each prisoner responsible for paying "the full fee in installments (or in advance, if § 1915(g) applies), no matter how many other plaintiffs join the complaint."[3] Id. at 856.

Like the Seventh Circuit, the Third Circuit in Hagan v. Rogers, 570 F.3d 146 (3d Cir. 2009), held that prisoners proceeding IFP may litigate jointly, but each prisoner must separately pay a

---

[3] Section 1915(g) provides: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

full filing fee. Id. at 150 ("IFP prisoners are not categorically barred from joining as plaintiffs under Rule 20. [However,] filing fees should be assessed on any plaintiff permitted to join under Rule 20 as though each prisoner was proceeding individually."). The court explained that even though § 1915(b)(3) provides in relevant part that "[i]n no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action," "[r]eading the PLRA as requiring each joint IFP litigant to pay a full individual filing fee by installment, and no more, harmonizes the PLRA with Rule 20, and internally harmonizes the various provisions of § 1915(b)." Id. at 155-56.

In contrast, and seemingly alone among the Circuits that have considered the issue, an Administrative Order issued by the Chief Judge of the Sixth Circuit in 1997, the year after the PLRA was enacted, instructs that when assessing fees in multi-plaintiff litigation under the PLRA, "each prisoner should be proportionally liable for any fees and costs that may be assessed," which "shall be equally divided among all the prisoners." In re Prison Litigation Reform Act, 105 F.3d 1131, 1138 (6th Cir. 1997). Some district courts in the Sixth Circuit have interpreted this administrative order to hold that only a single filing fee is required in a multi-prisoner IFP action. See, e.g., Fox v. Koskinen, 2009 WL 2507405, at *1 (M.D. Mich. Aug. 14, 2009) (apportioning responsibility for paying a single filing fee equally between two plaintiffs); Spencer v. Bynum, 2013 WL 4041870, at *1 (E.D. Mich. Aug. 8, 2013) (noting, without deciding, that even if apportionment of a single filing fee among several prisoners may

16

be appropriate, no "cases have suggested that one plaintiff in a multiple prisoner case could agree to be responsible for paying the entire filing fee"). Other courts in the Sixth Circuit have argued, however, that the administrative order in In re Prison Litigation Reform Act is not binding as it is not a panel decision and failed to consider the deterrent purpose of the PLRA, the impact of Rule 20 on the PLRA's implementation, or "the enormous bookkeeping implications" apportionment may have for clerks' offices and prison financial offices. See, e.g., Jones v. Fletcher, 2005 WL 1175960, at *6 (E.D. Ky. May 5, 2005) (addressing In re Prison Litigation Reform Act but concluding that because "the PLRA was designed to make prisoners feel the deterrent effect of the filing fee," each prisoner in a multi-plaintiff lawsuit must pay the full filing fee); Lawson v. Sizemore, 2005 WL 1514310, at *1 n.1 (E.D. Ky. June 24, 2005) (explaining that "the chief judge's administrative order [in In re Prison Litigation Reform Act] is only an indication of what the Court may have held in 1997 had the pure issue come before the court" and finding that "each separate plaintiff is individually responsible for a full filing fee").

The Ninth Circuit has not yet addressed whether the PLRA prohibits prisoners proceeding IFP from joining claims, or, if joinder is allowed, whether each prisoner must separately pay the full filing fee, as the weight of authority holds. See West v. Ulloa, 2018 WL 5974346, at *6 (C.D. Cal. Feb. 7, 2018). The Court notes that while district courts in this Circuit appear to have reached different conclusions as to whether the PLRA permits multi-plaintiff prisoner lawsuits, they consistently find that each

prisoner must separately pay the full fee. See, e.g., Muller v. Mashburn, 2019 WL 2490658, at *1 (E.D. Cal. June 14, 2019) (ordering severance of action brought by two prisoners while noting that "the filing fee provisions in the [PLRA] suggest[] that prisoners may not bring multi-plaintiff actions"); Surrell v. Gilliard, 2019 WL 916766, at *1 (E.D. Cal. Feb. 25, 2019) ("[T]he interplay of the filing fee provisions in the [PLRA] suggests that prisoners may not bring multi-plaintiff actions, but rather must each proceed separately."); but see Worm v. Berkebile, 2015 WL 4092770, at *3 (D. Mont. July 6, 2015) (the "statutory requirement of full payment of the filing fee remains applicable when multiple prisoners seek to join as co-plaintiff in a single action, such that each prisoner still must pay the full filing fee"); Treglia v. Kernan, 2013 WL 1502157, at *1 (N.D. Cal. Apr. 11, 2013) ("In order not to undermine the PLRA's deterrent purpose, courts have agreed that prisoner-plaintiffs who proceed together in one action must each pay the full filing fee."); Pinson v. Frisk, 2015 WL 738253, at *6 (N.D. Cal. Feb. 18, 2015) ("[T]he PLRA states, 'if a prisoner brings a civil action . . . the prisoner shall be required to pay the full amount of a filing fee. 28 U.S.C. § 1915(b)(1). This provision expressly requires each prisoner [in a multi-plaintiff lawsuit] to pay the full fee.").

Absent further direction from the Ninth Circuit, the Court concludes that it is premature to decide whether Dunne and Farrugia may proceed jointly, and if so, whether each is individually responsible for the payment of a full filing fee, as the great weight of authority both within and without this Circuit holds. It

18

is clear, however, that pursuant to the PLRA, Farrugia may not participate in this litigation in forma pauperis if he does not file an IFP application, supported by his prison trust fund statement for the prior six months.

Accordingly, Farrugia is **ORDERED** to file **one** of the following two documents within **thirty days** of the date of this Order:

1. An application to proceed in forma pauperis in this case, supported by a copy of Farrugia's trust account statement for the previous six months and an authorization for prison authorities to disburse monthly payments from his trust account pursuant to 28 U.S.C. § 1915(b)(2); **or**

2. A declaration explaining why Farrugia should not be dismissed for failure to file an IFP application.

Alternatively, Farrugia may file a Notice of Dismissal, **a copy of which is attached for his convenience**. Farrugia is cautioned that even if he does not currently have funds in his trust account, by proceeding with this action, he will be subject to the PLRA's filing fee requirements.

Farrugia is expressly advised that if he does not file one of the documents listed above by the Court's deadline, the Court will recommend that he or this action be dismissed pursuant to Federal

Rule of Civil Procedure 41(b) for failure to prosecute and obey Court orders.

**V.**

**CONCLUSION**

Neither Dunne nor Farrugia is in compliance with the PLRA's filing fee requirements.  Petitioners are each **ORDERED** to respond to this Order to Show Cause as set forth above within **thirty days** of the date of this Order.

The Clerk of the Court is directed to serve a copy of this Order upon Petitioners at their respective addresses of record.

IT IS SO ORDERED.

DATED: October 21, 2019

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE